**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-073** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **PEDRO MANCEBO,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is a motion to vacate (Doc. 350) pursuant to 28 U.S.C. § 2255 filed by Pedro Mancebo ("Mancebo").  For the reasons set forth below, the court will deny the motion.

## I.   Background and Procedural History

Mancebo is a citizen of the Dominican Republic who became a lawful permanent resident of the United States in 1992.  (Doc. 350, Ex. C).  On March 9, 2011, a federal grand jury sitting in the Middle District of Pennsylvania returned a three-count indictment charging Mancebo and five others with various drug trafficking offenses.  (Doc. 1).  Attorney Korey Leslie ("Attorney Leslie") represented Mancebo throughout the criminal proceedings.

On January 4, 2013, Mancebo pleaded guilty to a superseding felony information pursuant to the terms of a written plea agreement for conspiracy to manufacture, distribute, and possess with the intent to manufacture and distribute heroin.  (See Docs. 268, 270, 273-75).  Mancebo's plea agreement, which was written in both Spanish and English, includes a collateral appeal waiver.  (See Doc. 270 ¶ 35).  Specifically, the provision provides that Mancebo "waives the defendant's

right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (Id.)

On May 30, 2013, the court sentenced Mancebo to 37 months imprisonment and a three year term of supervised release. (Doc. 342). Following Mancebo's guilty plea, the Department of Homeland Security charged Mancebo with removal as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 350, Ex. C). Mancebo qualifies as an aggravated felon eligible for removal pursuant to 8 U.S.C. § 1101(a)(43)(B), which defines an aggravated felony in part as an offense that involves "illicit trafficking in a controlled substance . . . including a drug trafficking crime."

On February 4, 2014, Mancebo filed the instant motion. (Doc. 350). Mancebo alleges that Attorney Leslie provided ineffective assistance of counsel by failing to adequately inform him of the deportation consequences of his guilty plea.[1] (Id.) Within the motion, Mancebo contradicts himself by claiming that he "was not given any advice regarding removal consequences" and subsequently stating that Attorney Leslie assured him "off the record that he would not be deportable." (Id.

---

[1] On the first page of his motion, Mancebo also refers to his "plea agreement providing him for a possible motion for a downward departure . . . based on his substantial assistance to the government." (Doc. 350 at 1). However, he fails to make any argument, whether factual or legal, supporting any right to collateral relief based on this reference.

at 3, 8).  The court conducted an evidentiary hearing on Mancebo's motion on June 23, 2014.

Mancebo testified at the hearing.  He stated that Attorney Leslie only discussed the immigration consequences of his guilty plea after he signed the plea agreement, but before he pleaded guilty.  He claimed that, after signing the plea agreement, Attorney Leslie told him that deportation was a possible consequence of his guilty plea, but that Attorney Leslie never advised him that it was a definite consequence of his guilty plea.  When asked if he would have pleaded guilty if he knew that deportation was a virtual certainty, Mancebo responded "possibly no" and that "I would have fought it."

Attorney Leslie also testified at the hearing.[2]  He stated that, *prior* to Mancebo signing the plea agreement, he advised Mancebo that a guilty plea or conviction for a drug offense would undoubtedly trigger removal proceedings against him.  Attorney Leslie testified that Mancebo understood that deportation was a potential result of his guilty plea, but that Attorney Leslie never advised Mancebo that actual deportation was a virtual certainty.  In other words, in advising Mancebo, Attorney Leslie distinguished between the certainty of deportation proceedings occurring and predictions about the likelihood of Mancebo being removed from the country as a result of those proceedings.  Attorney Leslie

---

[2] Mancebo's testimony at the hearing was both confusing and contradictory. Thus, to the extent that it is inconsistent with Attorney Leslie's testimony, the court credits Attorney Leslie's testimony.

also testified that, with the assistance of an interpreter, he went through each

paragraph of the plea agreement with Mancebo, including the deportation

provision.  (See Doc. 270 at 37 ¶ 34 ("The defendant understands that, if he/she is

not a United States citizen, deportation is a possible consequence of his/her plea.")).

   The motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Under 28 U.S.C. § 2255, a person "in custody" may move the sentencing court

to vacate, set aside, or correct the movant's sentence.[3]  In general, the court may

afford relief under § 2255 based on one of four grounds: (1) the sentence was

imposed in violation of the Constitution or other federal laws; (2) the sentencing

court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the

maximum authorized by law; or (4) the sentence is otherwise subject to collateral

attack.  R. GOVERNING § 2255 CASES 1(a).

---

[3] When Mancebo filed the instant motion, he had already served his underlying sentence of incarceration, but was still subject to a three year period of supervised release.  See United States v. Essig, 10 F.3d 968, 970 n.3 (3d Cir. 1993) *superseded on other grounds by rule*, L.A.R. 31.3, *as recognized in* United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012) (writing that for purposes of § 2255, a petitioner is "in custody" if the petitioner is incarcerated or is serving a period of supervised release).  Moreover, Mancebo had been taken into custody at the Essex County Correctional Facility for removal proceedings.  Thus, Mancebo is clearly facing possible deportation as a collateral consequence of his conviction.  See United States v. Romera-Vilca, 850 F.2d 177, 179 (3d Cir. 1988) (holding that a defendant's motion to vacate was not rendered moot when he was released from custody because he faced potential deportation as a collateral consequence of his conviction).

In the case *sub judice*, Mancebo's plea agreement includes a collateral appeal waiver.  Courts will enforce such waivers, "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); see also United States v. Goodson, 544 F.3d 529 (3d Cir. 2008); United States v. Khattak, 273 F.3d 557 (3d Cir. 2001); United States v. Randazzo, Civ. A. No. 11-2411, 2011 WL 1743395 (E.D. Pa. May 6, 2011).  The defendant bears the burden of arguing that his waiver is "unknowing or involuntary." Mabry, 536 F.3d at 237-38.  However, the court also has an affirmative duty to examine the knowing and voluntary nature of the waiver and to determine whether the waiver's enforcement would result in a miscarriage of justice. Id.

Mancebo's motion fails to recognize that he waived any collateral review rights.  Mancebo also does not explicitly assert that his waiver was unknowing and involuntary or would otherwise result in a miscarriage of justice.  However, construed liberally, Mancebo's argument that his counsel failed to adequately advise him of the deportation consequences of his guilty plea could be taken as an allegation that either his guilty plea was unknowing or that enforcement of his collateral appeal waiver would result in a miscarriage of justice.  Thus, the court must first examine the underlying merits of Mancebo's argument to determine whether Mancebo's collateral appeal waiver should be enforced.

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To

5

prevail on this claim, a movant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial.  See id. at 687-88. Conclusory allegations are insufficient to entitle a movant to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the movant must show that, but for counsel's errors, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  Id. at 697.

**III.**   **Discussion**

To establish ineffective assistance of counsel, a defendant must satisfy both prongs of the Strickland test by showing that: (1) counsel's representation was objectively unreasonable; and (2) counsel's deficient performance was prejudicial. See Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (citing Strickland, 466 U.S. at 688, 694). Mancebo cannot establish that Attorney Leslie provided deficient representation. Hence, the court finds that Mancebo's collateral appeal waiver was knowing and voluntary, and that its enforcement will not result in a miscarriage of justice.

**1.      First Prong of the Strickland Test**

In Padilla v. Kentucky, 559 U.S. 356 (2010), the Supreme Court determined that a criminal defense attorney must inform her client when a conviction of pending criminal charges may result in deportation. Moreover, in cases where the law is sufficiently "succinct and straightforward," defense attorneys are required to advise their non-citizen clients of the specific removal consequences of their guilty plea, rather than simply advising the clients of a general risk or possibility of removal. Id. at 369. Such requirements are in addition to defense attorneys' overall duty to refrain from providing any affirmative misadvice concerning deportation. Id. at 369-71; see also id. at 388 (Alito, J., concurring) ("Accordingly, unreasonable and incorrect information concerning the risk of removal can give rise to an ineffectiveness claim."); Gudiel-Soto v. United States, 761 F. Supp. 2d 234, 238 (D.N.J. 2011) (holding that "[a]n attorney's complete failure to provide advice and

7

'affirmative misadvice' both qualify as ineffective assistance of counsel" under

Padilla).

      For non-citizens, deportation is an almost-certain consequence of certain

criminal convictions.  See 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felonies); 8 U.S.C.

§ 1227(a)(3)(D)(i) (falsely claiming United States citizenship); 8 U.S.C.

§ 1227(a)(2)(A)(i) (crimes involving moral turpitude).  The deportation statute at

issue in Padilla was 8 U.S.C. § 1227(a)(2)(B)(i), which provides that any alien

convicted of an offense relating to a controlled substance, other than possession of a

small amount of marijuana, is deportable.  In that case, the defense attorney did not

advise his client that he would face deportation proceedings as a result of pleading

guilty to a controlled substance offense.  559 U.S. at 359.  The defense attorney also

provided incorrect advice by stating that the defendant did not have to be

concerned about the deportation consequences of his plea.  Id.  The Padilla Court

reasoned that defense counsel could have determined that the guilty plea would

result in automatic deportation simply from reading the text of the statute involved,

because the statute does not address "some broad classification of crimes but

specifically commands removal for all controlled substances convictions . . . ."  Id. at

368.

      The Padilla majority also cited Justice Alito's concurrence as providing

examples of immigration statutes that are not "succinct and straightforward" and

which require defense counsel to merely advise of the risk of deportation.  Id. at

369.  Justice Alito cited the immigration statutes governing aggravated felonies and

crimes involving moral turpitude as two examples of statutes governing a "broad category of crimes" where the immigration consequences of a guilty plea are not immediately clear.  Id. at 377-78 (Alito, J., concurring).

It is readily apparent from the record that Attorney Leslie did not provide Mancebo with any affirmative misadvice concerning deportation.  To the contrary, his advice was quite accurate.  Attorney Leslie informed Mancebo that a guilty plea would unquestionably trigger removal proceedings that could result in his deportation.  Thus, regardless of whether the law surrounding the deportation consequences of Mancebo's guilty plea was "succinct and straightforward," Attorney Leslie satisfied his duty under Padilla.  Attorney Leslie's advice to Mancebo that his guilty plea would trigger removal proceedings that could result in his deportation was not objectively unreasonable.

## 2.      Second Prong of the <u>Strickland</u> Test

Even if the legal advice provided to him was construed to be deficient, Mancebo has failed to demonstrate prejudice.  The Third Circuit has held that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>United States v. Orocio</u>, 645 F.3d 630, 643 (3d Cir. 2011) *abrogated on other grounds by* <u>Chaidez v. United States</u>, 133 S. Ct. 1103 (2013) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  The court must find that a decision to reject a plea bargain would have been rational under the circumstances.  <u>Id.</u> (quoting <u>Padilla</u>, 559 U.S. at 372).

Mancebo does not provide any evidence that he would not have pleaded guilty but for Attorney Leslie's advice concerning deportation. Mancebo's bald assertions to the contrary are simply unavailing. The record demonstrates that Mancebo's counsel properly advised him that his guilty plea would trigger removal proceedings and that he could be deported. When Mancebo pleaded guilty, the court also advised him that his guilty plea could result in deportation. (Doc. 360 at 9, 11 ("You understand, Mr. Mancebo, that the fact that you're pleading to a felony does impact on your lawful permanent residency status and that in fact deportation proceedings may be commenced against you. You understand that, correct? Yes.")). Under these circumstances, the court cannot possibly conclude that, but for Attorney Leslie's advice, there was a reasonable probability that Mancebo would not have pleaded guilty and would have proceeded to trial.

## IV.  <u>Conclusion</u>

Mancebo cannot establish that Attorney Leslie's performance was deficient under <u>Padilla</u> or that he suffered prejudice as a result. In the absence of any ineffective assistance, the court finds that Mancebo's collateral appeal waiver was knowing and voluntary, and that its enforcement will not result in a miscarriage of

justice.  Accordingly, the court will deny Mancebo's motion.  An appropriate order

follows.


               /S/ CHRISTOPHER C. CONNER

               Christopher C. Conner, Chief Judge
               United States District Court
               Middle District of Pennsylvania


Dated:       July 9, 2014